# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ARMOND DAVIS ROSS,     )
                            )
      Plaintiff,        )
                            )
v.                         )     **Case No. CIV-13-323-R**
                            )
WARDEN MIKE ADDISON, et al.,    )
                            )
      Defendants.    )

## ORDER

Before the Court is the Report and Recommendation of United States Magistrate Judge Shon T. Erwin entered December 19, 2014. Doc. No. 62. Plaintiff has filed an Objection to the Magistrate Judge's conclusions in the Report and Recommendation. Doc. No. 64.[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court reviews the Report and Recommendation *de novo* in light of Plaintiff's objections.

Plaintiff, a state prisoner housed at Joseph Harp Correctional Center ("JHCC"), appearing pro se, brings an action under 42 U.S.C. § 1983. Doc. No. 1. He alleges that on May 27, 2011, he informed Defendants numerous times about death threats made against him by his cellmate, Offender Berry, and asked to be separated from Berry. *Id.* at 5-6. According to the complaint, prison officials told Berry he would be moved, and Berry

---

[1] The Court construes the "Notice to Court" filed by Plaintiff [Doc. No. 63] as a supplement to his Objection. In this Notice, Plaintiff cites OKLA. STAT. ANN. tit. 57, § 10, which prohibits individuals from "persisting in insulting and annoying or communicating with any prisoner after being first commanded by [an] officer to desist" while the prisoner is "at labor [or] going to and returning from the same." Section 10 is inapplicable to this case because Plaintiff has not alleged that anyone communicated with him when he was working, or when he was going to or returning from work. He also cites § 9 in his Notice, which provides, "If any officer or other person treat any prisoner in a cruel or inhuman manner he shall be punished by a fine not exceeding One Thousand Dollars ($1,000.00), or by imprisonment in the county jail not exceeding twelve (12) months, or by both such fine and imprisonment." This statute does not assist Plaintiff in any of the issues raised in the motion to dismiss.

1

said to Plaintiff, "You called the Police on me." *Id.* at 6. Later that same day, Berry was told that there was a "change of plans," which resulted in Berry remaining in Plaintiff's cell. *Id.* The next day, while in their shared cell, Berry struck Plaintiff numerous times on the head with a combination lock attached to a belt and attempted to suffocate him with a plastic bag. *Id.* at 7. Plaintiff alleges he was "hospitalized, requiring treatment for back, head, hand and leg injuries." *Id.* at 5. Defendants Mike Addison, Gary Bush, Mike McMillen, Sam Preston, and George Williams move to dismiss Plaintiff's claims against them. Doc. No. 48. They argue that they are immune from suit under the Eleventh Amendment, that Plaintiff has failed to allege personal participation on their part, and that they are entitled to qualified immunity. Also before the Court is Plaintiff's Motion for Preliminary Injunction [Doc. No. 60], a motion for reconsideration of the Court's Order dismissing claims against a former Defendant in this case [Doc. No. 65], and a motion to intervene [Doc. No. 66]. The Court addresses each of the pending motions in turn.

## I.  Motion to Dismiss

### A.  Standard of Review

In considering a motion under Rule 12(b)(6), the Court must determine whether the plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when the complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a

right to relief above the speculative level." *Id.* at 555, 570 (citation and footnote omitted). For the purpose of making the dismissal determination, the Court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).[2]

The Court construes Plaintiff's filings liberally because he is a pro se litigant. *Diversey v. Schmidley*, 738 F.3d 1196, 1199 (10th Cir. 2013). This means that if the court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). But the court will not "assume the role of advocate for the pro se litigant." *Belmon*, 935 F.2d at 1110.

## B. Eleventh Amendment

Defendants first argue that they are immune from suit under the Eleventh Amendment for claims against them in their official capacity. Doc. No. 48, at 3-4. The Eleventh Amendment generally bars federal jurisdiction over suits against a state by a citizen of that state. *Pettigrew v. Oklahoma ex rel. Oklahoma Dep't of Pub. Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013). This prohibition applies equally to suits against state

---

[2] Plaintiff attached to his response to Defendants' Motion to Dismiss an affidavit and two Requests to Staff. Doc. No. 52, Exs. 1-3. The Court has discretion to consider evidence beyond the pleadings and convert a motion to dismiss into a motion for summary judgment. *Marquez v. Cable One, Inc.*, 463 F.3d 1118, 1120 (10th Cir. 2006). The Court declines to do so in this case and will therefore consider only the allegations in the complaint.

officials in their official capacity because this type of suit "is no different than a suit against the state itself." *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The only exceptions are when Congress has abrogated a state's sovereign immunity, or the state has consented to suit, *id.*, neither of which apply in this case, *Muscogee (Creek) Nation v. Oklahoma Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010). Although there is no such bar for suits seeking prospective injunctive relief against state officials in their official capacity, *Guttman v. Khalsa*, 669 F.3d 1101, 1126 (10th Cir. 2012), Plaintiff seeks only monetary relief in his complaint, Doc. No. 1, at 8. Because Plaintiff provides no argument to counter this authority, his official capacity claims against Addison, Bush, McMillen, Preston, Rose, and Williams are dismissed for lack of jurisdiction.

### C. Personal Participation

Defendants next argue that Plaintiff has not alleged sufficient facts to show that they personally participated in a violation of his constitutional rights. Doc. No. 48, at 4. To succeed in a § 1983 claim, Plaintiff must allege and prove the personal participation of each Defendant. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Plaintiff alleges one cause of action in his complaint: "After giving DOC employees notice of physical threats against him, the defendants ignored Plaintiff's requests for protective action, being deliberately indifferent to his safety." Doc. No. 1, at 5. The Court interprets this cause of action as a claim of cruel and unusual punishment in violation of the Eighth Amendment. To establish such a claim against Defendants in their personal capacity,

Plaintiff must allege that Defendants knew he faced "a substantial risk of serious harm and disregarde[d] that risk by failing to take reasonable measures to abate it." *Gonzales v. Martinez*, 403 F.3d 1179, 1180 (10th Cir. 2005) (quoting Farmer *v. Brennan*, 511 U.S. 825, 847 (1994)). This standard of deliberate indifference requires actual knowledge; it is not enough that a particular Defendant *should have* known of the risk. *Id.* at 1186. To this end, the Court may not hold Defendants liable under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). To succeed in a § 1983 action against a defendant-supervisor, Plaintiff must show that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation," in this case, deliberate indifference. *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (footnote and citation omitted).

### 1. Addison and Preston

Plaintiff alleges that Defendant Addison is the Warden of JHCC and is responsible for day-to-day operations and security. Doc. No. 1, at 2. He also alleges that Defendant Preston is a Unit Manager at JHCC, and was responsible for cell and bunk assignments, as well as the safety of inmates on his unit. *Id.* at 2-3. Plaintiff refers the Court to policies promulgated by the Department of Corrections that provide steps officials should take to protect prisoners from each other. Doc. No. 52, at 1-2. Even if Addison and Preston failed to follow these procedures, this does not amount to a constitutional violation. *Hostetler v. Green*, 323 F. App'x 653, 657-58 (10th Cir. 2009 (unpublished) (citing *Hovater v.*

*Robinson*, 1 F.3d 1063, 1968 n.4 (10th Cir. 1993)) (citation omitted). Plaintiff does not allege that these Defendants had any knowledge of the alleged death threats against him or any other facts that would support an inference of deliberate indifference. Therefore, his claims against Addison and Preston in their personal capacity are dismissed. *See Lesley v. Whetsel*, 110 F. App'x 851, 853 (10th Cir. 2004) (unpublished) ("Mr. Lesley never alleged that Officer LeHan was actually aware of the conflict between him and his attacker.").

### 2. Rose

Plaintiff alleges that Rose was the Chief of Security at JHCC, and was responsible for inmate safety. Doc. No. 1, at 2. He asserts that he spoke with Rose in April 2011 about threats and stalking by Berry. *Id.* at 6. But Plaintiff is not specific in his complaint regarding the particular threats he discussed with Rose. He simply alleges that he complained of "other threats and stalking." *Id.* Without a more specific allegation about what he told Rose, Plaintiff has not alleged sufficient facts for the Court to infer that Rose was aware of a substantial risk of serious harm to Plaintiff. *See Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001) ("Curley has not alleged facts to show that the vague threat he received, without more, poses a substantial risk of serious harm to him."). The Court thus dismisses Plaintiff's claim against Rose in his personal capacity under 28 U.S.C. § 1915A(b)(1) for failing to state a claim upon which relief may be granted.

### 3. Williams

Plaintiff alleges that Defendant Williams was a Unit Manager at JHCC and, like Preston, was in charge of cell and bunk assignments and inmate safety. *Id.* at 3. He

asserts that he spoke with Williams on May 27, 2011 "concerning threats made against [his] life by Offender Berry." *Id.* at 6. Williams told Plaintiff he would get back with him after speaking with Berry. *Id.* Because Williams was allegedly responsible for Plaintiff's safety and cell assignments, it is plausible that he did not act reasonably in his response to Plaintiff's complaints. His knowledge of the death threats, in combination with his authority over cell assignments and his failure to reassign Plaintiff or Berry, support an inference of deliberate indifference to Plaintiff's safety. *See Smith v. Freil*, 170 F. App'x 580, 583 (10th Cir. 2006) (unpublished) ("Captain DeJulio's and Lieutenant Gordon's knowledge of the substantial risk of harm-a risk which was actually realized on five occasions-coupled with their direct involvement in Mr. Smith's housing assignment, could support an inference of deliberate indifference." (citations omitted)). Therefore, Plaintiff has stated a claim for relief against Williams in his personal capacity.

### 4. McMillen

Plaintiff alleges that Defendant McMillen was a correctional officer at JHCC and was on duty as Shift Captain on May 28, the day of the attack. Doc. No. 1, at 3-4. On May 27, Plaintiff allegedly told McMillen of Berry's death threats and his stalking of Plaintiff late at night in their shared cell. *Id.* at 6. He also told McMillen that in April 2011, he told Defendant Rose about prior threats and stalking by Berry. *Id.* McMillen said he would look into the matter. *Id.* After Berry attacked Plaintiff and Plaintiff was in the JHCC Clinic, McMillen allegedly "approached [Plaintiff] to offer his profuse apology." *Id.* at 7.

Based on Plaintiff's allegations, the Court can infer that McMillen knew of a substantial risk of serious harm to Plaintiff, yet failed to take reasonable action to prevent the harm, such as separating Plaintiff and Berry. *Cf.* Lane *v. Klingler*, 25 F. App'x 781, 783 (10th Cir. 2001) (unpublished) ("[N]or did he allege that he had previously been threatened by him. There is no allegation that the defendants knew there was a substantial risk of serious harm to him.").[3] The Court finds that Plaintiff has stated a claim against McMillen in his personal capacity.

### 5. Bush

Plaintiff alleges that Defendant Bush was a correctional officer at JHCC and, on the day of the attack, was on duty as the J-Unit Shift Sergeant, responsible for the safety of inmates. Doc. No. 1, at 4. On the morning of May 27, Bush told Plaintiff to report to Lt. Wilbur at Central Control. *Id.* at 6. Later that day, Bush initially told Berry he would be moved when count cleared, but came back later to say that plans had changed. *Id.* Plaintiff has not alleged that Bush knew of the death threats. Bush could simply have been following orders, without any knowledge as to why Plaintiff needed to go to Central Control, or why Berry was going to be moved. Absent an allegation attributing knowledge to this Defendant of a substantial risk of serious harm, Plaintiff has failed to

---

[3] *See also Sims v. Schaad*, 185 F.3d 875, 875 (10th Cir. 1999) (unpublished) ("Sims was in an open ward where Gadlin and other inmates could gain free access to his cell. Given Sims' allegation that he advised Schaad of the repeated threats of serious harm from Gadlin, and viewing that evidence in the light most favorable to Sims, we find no error in the district court's conclusion that the conditions alleged posed a substantial risk of serious harm." (footnote omitted) (citing *Farmer*, 511 U.S. at 833 ("[H]aving stripped [inmates] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course."))).

allege that Bush was deliberately indifferent to his rights. Accordingly, his claim against Bush in his personal capacity is dismissed.

### D. Qualified Immunity

Defendants next argue that even if Plaintiff states a claim against them in their personal capacity, they are entitled to qualified immunity. Doc. No. 48, at 6. Qualified immunity shields from liability government officials performing discretionary functions "if their conduct does not violate clearly established rights of which a reasonable government official would have known." *Perez v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, 432 F.3d 1163, 1165 (10th Cir. 2005). In this analysis, the Court makes two determinations: whether the plaintiff has alleged the deprivation of a constitutional right, and whether that right was clearly established at the time of the alleged violation. *Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). Plaintiff bears the burden of alleging facts sufficient to allow the Court to make these determinations, *id.*, and the Court applies "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally," *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (quoting *Shero v. City of Grove, Ok.*, 510 F.3d 1196, 1200 (10th Cir. 2007)). If Plaintiff sufficiently alleges the deprivation of a clearly established constitutional right, qualified immunity will not protect Defendants.

As explained above, Plaintiff has alleged the deprivation of a constitutional right with regard to Defendants Williams and McMillen. The Court must now determine if the right as alleged by Plaintiff was clearly established at the time of the alleged violation. The test for determining whether a right is "clearly established" is an objective one.

*Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Although the Court must engage in a fact-specific inquiry, *id.* at 641, Plaintiff need not produce a case with identical facts. "[S]ome degree of generality in factual correspondence" is permitted." *Smith v. Cochran*, 339 F.3d 1205, 1215 (10th Cir. 2003) (quoting *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1260 (10th Cir. 1998)).

Here, Plaintiff alleges that Williams and McMillen had actual knowledge that his cellmate Berry had threatened to kill Plaintiff multiple times, yet let the two men remain in the same cell. Defendants "have a constitutional duty to take reasonable measures to protect prisoners against current threats of attack and other 'sufficiently imminent dangers' … likely to cause harm." *Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996) (citation omitted). The Court finds that it was clearly established in 2011, when the alleged constitutional violations occurred, that "an inmate has an Eighth Amendment right to be protected against prison guards taking actions that are deliberately indifferent to the substantial risk of [violence] by fellow prisoners." *Hostetler*, 323 F. App'x at 659 (finding this right to be clearly established by 2004) (citing *Farmer*, 511 U.S. at 833-34; *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980) ("[A]n inmate does have a right to be

reasonably protected from constant threats of violence and sexual assaults from other inmates.")); *see Howard v. Waide*, 534 F.3d 1227, 1242 (10th Cir. 2008) ("The Supreme Court and the Tenth Circuit have repeatedly and unequivocally established an inmate's Eighth Amendment right to be protect from substantial risks of sexual assault by fellow prisoners.") (citing *Farmer*, 511 U.S. at 833-34; *Ramos*, 639 F.2d at 572 (same)); *Colwell v. Johnson*, 209 F. App'x 784, 786-87 (10th Cir. 2006) (unpublished) (holding that a claim involving failure to allow transfer for an inmate's safety fell within a clearly established right under *Farmer*). Accordingly, Defendants Williams and McMillen are not entitled to qualified immunity.

## II. Preliminary Injunction

Plaintiff has filed a Motion for Preliminary Injunction asking the Court to enjoin Defendants "from any further harassment, any retaliatory transfers, or any other retaliatory measures taken as a result of Plaintiff's filing his complaint against them." Doc. No. 60, at 2. "To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp. v. Urban Gorilla, L.L.C.*, 500 F.3d 1222, 1226 (10th Cir. 2007). Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citations omitted). Plaintiff has not provided support for his assertion that Defendants will harass or retaliate against him in the future, thus

failing to meet the irreparable harm requirement. Further, he has not demonstrated a substantial likelihood of success on the merits. Accordingly, Plaintiff's Motion for Preliminary Injunction is denied.

## III.    Motion to Add Party

Plaintiff also recently filed a Motion to Re-Instate Justin Jones as a Defendant. Doc. No. 65. On September 29, 2014, the Court dismissed Plaintiff's claims against Jones in both his official and personal capacities. Order, Doc. No. 57. The Court construes Plaintiff's most recent motion as a motion to reconsider its September 29 Order. The Court may grant a motion to reconsider "when the court has misapprehended the facts, a party's position, or the law." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014) (citing *Servants of Peraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). Grounds for reconsideration include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* (quoting *Peraclete*, 204 F.3d at 1012). Plaintiff has not directed the Court to any change in the controlling law and has not provided new evidence that was previously unavailable. The Court also finds no clear error or manifest injustice in its prior Order. Therefore, Plaintiff's motion for reconsideration is denied.

## IV.    Motion to Intervene

Robert Cotner, a state prisoner at Joseph Harp Correctional Center, filed a motion to intervene in this case. Doc. No. 66. He states that he was a private investigator from 1967 to 1992, a nine-year member of the Oklahoma Correctional Association, and that he practices law in various jurisdictions. *Id.* Having not provided any reason why he is

entitled to intervene under Fed. R. Civ. P. 24(a), or why the Court should permit him to intervene under Rule 24(b), the Court denies Cotner's motion.

## V. Conclusion

The Court adopts the Report and Recommendation of the Magistrate Judge [Doc. No. 62], as supplemented herein, to the extent it is consistent with this Order. Plaintiff's Motion for Preliminary Injunction [Doc. No. 60] is DENIED; Plaintiff's motion for reconsideration [Doc. No. 65] is DENIED; Robert Cotner's motion to intervene [Doc. No. 66] is DENIED; and Defendants' Motion to Dismiss [Doc. No. 48] is GRANTED in part and DENIED in part. The Court dismisses the official capacity claims against all Defendants for lack of jurisdiction because Defendants are immune from such claims under the Eleventh Amendment. Additionally, the Court dismisses all personal capacity claims against Defendants Addison, Preston, Bush, and Rose for failing to state a claim upon which relief may be granted. Plaintiff's personal capacity claims against Defendants Williams and McMillen remain, as they are not entitled to qualified immunity. If Plaintiff seeks to amend his Complaint, the Court grants him leave to do so by February 6, 2015. *See Staats v. Cobb*, 455 F. App'x 816, 818 (10th Cir. 2011) (unpublished) ("[A] court 'should dismiss *with leave to amend* … if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief.'" (quoting *Brever v. Rockwell Int'l. Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (citation and footnote omitted))).

IT IS SO ORDERED this 16th day of day of January, 2015.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE